UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                      ORDER

NICHOLAS PAGLIUCA,                      17-CR-432 (CS)

               Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Nicholas Pagliuca's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1), known as "compassionate release." (Doc. 58.)[1]

      Defendant was sentenced principally to thirty-six months' imprisonment on his conviction for possession of child pornography. (Doc. 46.) The parties agree that he has served approximately 80% of his sentence. He alleges, and the Government does not dispute, that absent the COVID-19 pandemic, he would have been eligible for release to a halfway house already.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of such a health condition is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served

---

[1] When they are able to do so, the parties are directed to send unredacted hard copies of their submissions to chambers for filing under seal.

75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above. Defendant does not suggest he meets any of the first three categories, but argues that the risk the corona virus pandemic poses to one with his health conditions meets the fourth category.

Defendant will turn 69 years old next week. He has diabetes and may have recently had a heart attack. Each of those factors, according to the Centers for Disease Control ("CDC"), put him at increased risk for a severe case should he contract COVID-19.[2] His diabetes is well controlled by medication, as the Government points out, but the Government has not supplied evidence from which I could infer that that means that his diabetes is not a risk factor. The Government further notes, and appears to be correct, that Defendant is getting appropriate medical attention in prison, but that likewise does not suggest that the risk factors identified above are not risk factors. Finally, the Government also points out that that all cases of COVID-19 at FCI Fort Dix are in the camp, whereas Defendant is housed at the prison. I agree that that that reduces the risk to Defendant, although of course the situation could change at any time, and of course anyone in an institution where social distancing is not possible – be it a prison, an aircraft carrier or a nursing home – is by definition at increased risk. On balance, I find that the combination of Defendant's age and medical conditions, combined with his confinement at a facility where social distancing is not possible, constitute an "extraordinary and compelling reason" within the meaning of 18 U.S.C. § 3582(c)(1)(A).

---

[2] Although Defendant is not so obese as to meet the CDC criterion for that risk factor, which is a body mass index ("BMI") of 40, he is close, with a BMI of 36.6. He also suffers from high blood pressure and hyperlipidemia, neither of which is on the CDC list of risk factors.

I must next consider the § 3553(a) factors.  Defendant's offense was heinous.  He amassed, over a long period, a large and curated collection of disgusting images of child abuse and torture.  He even paid for some of them, contributing to the market for such images and therefore the continued abuse of children, and he destroyed evidence that the agents had missed in their search.  Once caught, he did not seem to come to terms with how disgraceful his conduct was.  At the same time, there was no evidence that he had committed any contact offense, and multiple professionals opined that he had made progress in treatment and presented a very low risk of recidivism.  I do not think that it would be unjust, undermine respect for the law, introduce unwarranted sentencing disparity, or otherwise undermine the purposes of sentencing to allow him to serve thirty months of his thirty-six month sentence in prison and six months of it under home incarceration, given the increased risks to his health presented by continued imprisonment.  Further, based on the professional assessments, I find that Defendant is unlikely to pose a danger to the community were he to be released six months early with the additional conditions of supervised release I intend to impose, and that the risks presented by his remaining incarcerated outweigh the § 3553(a) factors that would be served by requiring him to finish those six months.

Accordingly, the motion is granted and the term of imprisonment is reduced to time served.  Defendant shall be released forthwith, on the following conditions – which are special conditions of supervised release in addition to the conditions of supervised release already imposed:

1. The defendant shall be subject to home incarceration, to be enforced by GPS monitoring, at the residence approved by Probation until his originally scheduled Bureau of Prisons release date of November 14, 2020.  Installation of GPS monitoring will take place after a 14-day

quarantine period (described in item 2 below) has been completed. During the period of home incarceration, the defendant must remain at his approved residence except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency, and except as necessary to obtain essentials, which requires prior notice to and approval by the Probation Department.

2. In light of the COVID-19 pandemic, Defendant upon release must self-quarantine at his approved residence for 14 days, except as necessary for medical treatment, which requires prior notice to and approval by the Probation Department unless it involves a true emergency. Defendant shall arrange with a friend, relative or other third party to provide essentials during this 14-day period, and only if that is impossible, Defendant shall request permission from Probation to obtain essentials on his own, which he shall not do without Probation's approval.

3. The defendant is to possess or have access to a phone that will allow video conferencing by the Probation Department. This phone will be monitored by Probation per the special condition previously imposed.

4. Defendant is not to have direct or indirect contact with any relative who he knows or should know does not welcome the contact or, with respect to children under 18, whose parent or guardian does not approve of the contact.

5. Defendant shall contact Supervisory U.S. Probation Office Kevin Mulcahy (646-210-4075) upon his release.[3]

---

[3] I am imposing the first condition to impose just punishment, avoid unwarranted disparities, and recognize the seriousness of the offense. The reason for the next condition is obvious. The third and fifth conditions are imposed to allow proper supervision by Probation. The fourth condition is imposed because the Court has been informed that during his incarceration, Defendant has been attempting to contact his grandchildren, and he knows from

  I am aware of the irony that I am granting a compassionate-release sentence reduction to a defendant who had so little compassion for the children whose torture and abuse he enjoyed viewing.  I hope nobody interprets this Order as denigrating the gravity of the offense, the shameful nature of Defendant's conduct, or the harm to his victims.  Release is justified only because he has so little prison time left to serve, medical conditions that elevate his risk for COVID-19, and (according to experts) an unusually low risk of recidivism.  Defendant is advised that the Court will regard it a serious violation of the trust the Court has placed in him if he fails to abide by any of the previously imposed conditions of supervised release or any of the additional conditions set forth above, and that it will not hesitate to return him to prison if his actions justify it.

Dated: May 18, 2020
   White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

his Presentence Report ("PSR") that their parents do not approve.  He is also aware through sentencing letters and the PSR that certain of his other relatives want nothing to do with him.